UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


UNITED STATES OF AMERICA                                    PLAINTIFF


v.                                  CRIMINAL ACTION NO. 3:08-CR-18-CRS


DEMETRICK BOYD                                              DEFENDANT


**<u>MEMORANDUM OPINION AND ORDER</u>**


This matter is before the Court for consideration of a motion of the defendant, Demetrick Boyd, *pro se*, seeking a compassionate release and/or early home confinement due to health concerns, age, family circumstances and fear of serious illness or death from the COVID-19 virus (DN 179).

Boyd filed his motion for compassionate release with this Court on September 21, 2020 in which he stated that he had fully exhausted all administrative rights to appeal because he "filed a request for compassionate release more than thirty days ago to the warden of his institution, the Federal Correctional Institution at McDowell." DN 179, p. 11. Boyd did not provide a copy of the request with his motion. The United States produced a copy of a request from the BOP records. It is dated September 27, 2020, a date after Boyd had already filed his motion in this Court. The Warden denied his request on September 28, 2020 noting that he had considered the request under the Program Statement 5050.50 guidance for compassionate release, and that

Boyd's concern about being potentially exposed to or contracting the COVID-19 virus did not warrant early release from his sentence. DN 185-2, p. 1. The Warden instructed Boyd that he had a right to appeal the decision within twenty days of receipt of the denial. Boyd does not indicate that he appealed the decision and there is nothing in the records provided to this Court to suggest that he had done so.

The United States responded to Boyd's motion and objected on the ground of failure to exhaust administrative remedies and also on the merits (DN 183). It has also filed various BOP administrative and medical records under seal. (DNs 184; 185).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 164,409,804 confirmed cases worldwide and 3,409,220 deaths; in the United States, there are 32,676,954 confirmed cases and 581,717 deaths.[3] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic result is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited May 14, 2021).

considering requests for compassionate release.  Suffice it to say that the Court addresses motions for compassionate release, and Boyd's motion in particular here, with the gravity of the situation in mind.

Boyd is serving a 248-month prison sentence after pleading guilty in 2009 to charges of possession with intent to distribute and distribution of 5 grams or more of crack on one date and 50 grams or more of crack on another date, using or carrying a firearm during and in relation to a drug trafficking crime, and being a felon in possession of a firearm.  DNs 23, 71. This was not his first drug trafficking or firearms conviction.  Boyd qualified as a career offender at the time of sentencing.  Boyd is incarcerated at the Federal Correctional Institution ("FCI") McDowell and is receiving medical care there, as needed.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).

Boyd contends in his motion that he "filed a request for compassionate release more than thirty days ago to the warden" (DN 179, p. 11), and thus he should be deemed to have exhausted his administrative remedies in accordance with what has come to be referred to as the "lapse of 30 days" provision contained in the statute. *United States v. Alam*, No. 20-1298, 2020 WL

2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").

Boyd suggests that he has exhausted his administrative remedies despite the fact that the records indicate that his request to the warden for compassionate release was not received by the warden until six days after he filed the present motion with the Court. He does not appear to have either appealed the denial by the warden or waited for thirty days to elapse before filing his motion in this Court.

Boyd received a response and did not appeal, despite that avenue being fully available to him. Thus, he never "fully exhausted his administrative rights" as required by 18 U.S.C. § 3582(c)(1)(A), a prerequisite before a defendant may seek compassionate release from the Court. He chose not to appeal and asserts the "lapse of 30 days" provision, yet he did not wait for a lapse of thirty days to occur to file. For these reasons, the Court finds that Boyd has failed to "fully exhaust all administrative rights," and that the "lapse of 30 days" provision is unavailable to him to avoid this exhaustion requirement.

After considering various opinions addressing the exhaustion provisions of the First Step Act, the Court concludes that the thirty-day exception to the exhaustion requirement was not designed to provide a "gotcha" mechanism when a response is actually received and the defendant has an available avenue to fully exhaust his rights. Rather, the "lapse of 30 days" provision was designed to address cases in which no prompt response is forthcoming from the BOP and a defendant is left in limbo awaiting agency action. The statute tries to strike a reasonable balance between affording the BOP time to address the request, initially and on appeal, before there is review by the courts and ensuring there is no undue delay in the agency

process.   A defendant is thus deemed to have exhausted and may file his motion with the Court without waiting further for a BOP response after a lapse of thirty days from the date of his request to the warden.

The "lapse of 30 days" language has been variously interpreted as a "lapse of time" provision or a "futility" provision.

Under the "lapse of time" interpretation, once thirty days passes from the warden's receipt of a defendant's request for compassionate release, the defendant may petition the federal court for relief whether or not the warden has responded within the thirty-day period.  The "lapse of time" is viewed simply as a waiting period before judicial relief may be sought.

This interpretation would completely emasculate the requirement of full exhaustion of all administrative rights.  Higher level review by the BOP by way of administrative appeal would be rendered entirely optional.  "Preventing prisoners from charging straight to federal court serves important purposes."  *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020).  The BOP is uniquely positioned to assess prisoners' mental and physical health and potential risk to the public if released, and whether extraordinary and compelling reasons exist for compassionate release.  *See United States v. Haas*, Civ. No. 6:17-cr-00037-GFVT-HAI-1, 2020 WL 4593206 (E.D.Ky. Aug. 7, 2020)' *citing United States v. Zuckerman*, No. 16 CR 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *Alam*, 960 F.3d at 834.

Indeed, in enacting the First Step Act, Congress sought to enhance the effectiveness of the BOP's compassionate release review scheme, not replace it. *See United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277 (E.D.Ark. May 14, 2020); *United States v. Ng Lap Seng*, 459 F.Supp.3d 527, 536 (S.D.N.Y. Mar. 15, 2021)("If Congress desired to so fundamentally

change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act.").

Reading the "lapse of 30 days" language as a "futility" provision satisfies the apparent dual objectives of Congress to respect the BOP's process while ensuring expeditious and expanded access to the Courts for defendants.

In *Haas, supra,*, the district court explained that § 3582(c)(1)(A) requires the defendant to "fully exhaust all administrative rights" and where the BOP responds to the defendant's request within thirty days, the defendant is required to see the appeals process through and the "lapse of 30 days" provision has no bearing on the case.  *Haas, supra.,* at *5.  The court noted, however, that the Sixth Circuit has yet to specifically address whether a defendant must fully exhaust his appeals when he receives a response from the BOP within the thirty-day window.  *Id.* Concluding that a reading of the "lapse of 30 days" language as a "futility" provision led to a logical result, the district court in *Haas* found that full exhaustion of the administrative process was required and held that Haas had failed to exhaust his administrative remedies.

Under a "futility" theory, where a defendant has been afforded an avenue for appeal, he is required to pursue it before seeking relief in federal court and the "lapse of 30 days" provision is inconsequential.  The Court finds this outcome to be consistent with Congressional intent.  We do not read the statute to render appeals optional, as such reading would render the exhaustion language superfluous.  This Court would therefore follow the "futility" interpretation of the statutory 30-day language and find that Boyd failed to exhaust administrative remedies.

In any event, Boyd did file a request with the warden, albeit after filing his motion with the Court, in an attempt to exhaust.  We reject Boyd's rationale that he can claim to have fully exhausted because it is apparent from the records that that he did not wait thirty days after

6

making his request to the warden, but rather filed his motion before.  We note, however, that a significant period of time has passed since Boyd sought compassionate release from the warden. There appears to be room for a difference of opinion concerning whether Boyd would ultimately be required to appeal were we to dismiss the present motion and require that he engage in the administrative process over again.  In *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020), the district court noted that "reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4.  The court stated that "although the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834.  We find that there would be pointless further delay if we deny Boyd's motion to have him simply refile with the warden and return to federal court after a lapse of thirty days.  We find this situation distinguishable from that in which the defendant filed no request with the warden at all. Therefore, for purposes of this opinion, we will assume that Boyd satisfied the exhaustion requirement of the First Step Act and address the substance of his motion.

Boyd's motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing

7

Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)**    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Boyd, now 45 years old, contends that he is "experiencing a serious deterioration in health and has served at least 10 years or 75 percent of his term of incarceration." DN 179, p. 12. He contends that his "health, age, length of imprisonment, family circumstances and the sweeping COVID-19 pandemic, also rise together to form extraordinary and compelling circumstances under other reasons." DN 179, p. 13. He states that BOP has transferred 7551 inmates to home confinement" due to the COVID-19 pandemic, and he fears the spread of COVID-19 in the prison. DN 179, p. 24. He acknowledges that § 1B1.13 is not binding on the

Court in considering this motion, but he claims that he meets the Policy Statement's criteria. He says that he is "nearing 50" and "experiencing a serious deterioration in his health due to the aging process," as he suffers from hypertension and PTSD. DN 179, p. 14.

While the CDC has indicated that hypertension may be a risk factor for the development of complications in individuals who contract COVID-19, there is nothing in Boyd's medical records that indicates that he suffers from hypertension. PTSD is not identified as a risk factor for COVID-19 complications. The Individualized Needs Plan provided by Boyd with his motion indicates that as of July 29, 2020, Boyd is classified as Care 1 Healthy or Simple Chronic Care. DN 179-1. Further, Boyd has been fully vaccinated against the COVID-19 virus, and thus the fear of medical complications from contracting COVID-19 is significantly diminished by Boyd's efforts at self-care to prevent infection and serious illness. Further, we note that as of this writing, the Bureau of Prisons website (https://www.bop.gov) reports there are no cases of COVID-19 among the inmates at FCI McDowell, thereby virtually eliminating the possibility that Boyd will catch the virus. Finally, of 1,391 total inmates in the institution, 737 inmates and 129 staff have also been fully vaccinated. Thus, Boyd's concerns about his health and the COVID-19 pandemic fail to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) as the prevalence of COVID-19 at FCI McDowell and risks associated with exposure to the virus are not as represented in Boyd's motion.

Boyd cannot successfully argue that his sentence should be reduced because he is in poor health under the § 1B1.13 criteria. The Sentencing Commission identified terminal illness, or a serious physical, medical, or mental condition that substantially diminishes the ability of the defendant to provide self-care while incarcerated, and which is terminal or an otherwise permanent condition as evidencing an "extraordinary and compelling" reason for a sentence

reduction.  While not directly applicable to a defendant's request for compassionate release, the severity of the impairments noted by the Commission to meet the "extraordinary and compelling" threshold suggests that something more than manageable, garden-variety health conditions is required to clear this first hurdle.  Boyd has not alleged he suffers from a condition or combination of conditions that leave him so impaired.

He suggests he is suffering from "a serious deterioration in his health due to the aging process" and is "nearing 50a."  However, he identifies (without documentation) hypertension and PTSD which clearly do not rise to the level of impairment described in the policy statement, either in subsection (A) Medical Condition or (B) Age.  Further, Boyd takes great liberties with mathematic computation.  He states that he meets the age requirement of 65 years old for consideration under  § 1B1.13(B) because he is "close to 50." "Nearing 50" is not 65, and with a birthdate of 11/07/1975, he is, in fact, only 45 years old.  Thus, Boyd does not meet the criteria under the policy statement as he suggests.

Boyd mentions (C) Family Circumstances, but he does not allege the death or incapacitation of the caregiver of his minor children.  Family struggles during a defendant's incarceration are indeed common and problematic but are insufficient to constitute an extraordinary and compelling reason for compassionate release.

Finally, Boyd urges that all of his concerns taken together satisfy (D) Other Reasons which warrant compassionate release.  The Court concludes that these factors do not compound into an extraordinary and compelling ground for Boyd.  This (1) 45-year-old defendant, (2) with medically manageable physical and mental issues, none of which is debilitating, (3) who has not suffered the death of a family caregiver, (4) who has been fully vaccinated against COVID-19, and (5) is incarcerated in a facility which presently has no COVID cases, is simply not a

candidate for compassionate release, under § 1B1.13(A)-(D), or otherwise in our discretionary evaluation.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Boyd's crimes weigh against release as he poses a very real danger if released from custody.  The Court agrees with the United States for a number of reasons.

First, Boyd is a career offender and was held responsible in this case for selling 13.1 grams of crack cocaine on one date, and 53.6 grams of crack on another date.  At the time of the larger sale, Boyd was found "cooking" crack while armed with a .40 caliber Glock semiautomatic pistol. Boyd also has prior convictions for trafficking in cocaine and marijuana, and possession of drug trafficking paraphernalia, all of which involved firearms such as a sawed-off shot gun, handguns, and a stun gun.  His record includes a conviction for resisting arrest and other violent behavior such as shooting a man which resulted in a conviction for fourth degree assault.  Boyd's release was revoked a number of times, once while on shock probation and once while on parole after completion of a ten-year sentence for drug trafficking.  Thus, the nature and circumstances of the offenses as well as these aspects of the defendant's history and characteristics militate against a sentence reduction, as the danger posed to the community appears great.

Because of this evidence, the Court places little confidence in Boyd's citation to statistical evidence that "His current age of 45 places him in a class of prisoners least likely to recidivate." DN 179, p. 26.  In assessing the appropriate disposition of a motion for compassionate release, we

must look at the individual, not to general statistical classes of offenders.  We have looked at this particular defendant's offense conduct, the nature and circumstances of those crimes, as well as the criminal history which preceded it.  We find especially concerning his repeated narcotics and weapons offenses, resisting arrest, an assault with a firearm, and continuing probation and parole violations, all of which evidences a serious disregard for the law and for law enforcement officers. The commission of the additional drug trafficking and firearms crimes for which he is currently incarcerated indicates to this Court that there was, at that time, a lack of reform of this defendant after having served previous periods of incarceration.  These factors paint a formidable picture of a defendant who should not be granted compassionate release.

Boyd states that he (1) "has been an exemplary, model inmate," (2) has "worked steadily" throughout his time in prison, and (3) he "is reformed and committed to living a crime-free life." DN 179, pp. 25-26.  Boyd has not supported any of these statements with documentation such as certificates of completion, but he has provided a copy of his Individualized Needs Plan generated in July of 2020..

The United States has provided Boyd's prison disciplinary records.  He has not had any disciplinary write-ups for violent behavior.  However, he has several disciplinary infractions.  He was found in possession of drugs as recently as 2019 and in possession of smoking apparatus in 2018,  as well as possession of cigarettes, possession of unauthorized items and being insolent to staff members. DN 185-4, pp. 1-2.  Boyd's Individualized Needs Plan indicates that he completed his GED in 2011 and has taken numerous education courses over his time in prison many of which may be beneficial to Boyd when he is released from custody.  We note that the Needs Plan indicated that he has struggled with drug treatment and there was a drug abuse diagnosis pending as of May 4, 2020. *Id.*

This Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision).   While it remains wholly within the Court's discretion whether and to what extent to reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

We acknowledge Boyd's positive steps in pursuing and attaining his GED and attending various classes.  The Court finds it laudable that Boyd is motivated to improve himself and his circumstances when he is released.  He has indicated that he has a place to live and the promise of a job upon his release.  While this information is unverified at this stage, it is promising that Boyd is being foresightful in planning for his eventual release.  We also acknowledge his generally good conduct while incarcerated, which indicates that he has adjusted fairly well in his institution. We note, too, that good conduct is expected and rewarded in the prison system.  Boyd has served approximately ten years of a 248-month sentence.  Boyd notes that he has been in continuous custody since February of 2008 and we should include credit for his pretrial confinement in the calculation. Using that figure, Boyd has served approximately 158 months or only 63% of his sentence.

In imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the serious nature of the offenses which involved large quantities of crack cocaine and firearms charges.  As already noted, this was not his first drug trafficking or weapons conviction.  Considering the seriousness of the crimes and Boyd's history and characteristics we have previously described, this Court found that a sentence of 248 months imprisonment for this career offender was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense.

The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with the defendant having served only slightly more than half of the sentence, that a reduction in sentence would undermine the carefully balanced sentencing factors which are served by the sentence imposed. The defendant's good conduct in prison, his statement which we take at face value that he "is reformed and committed to living a crime-free life," and his asserted wake-up call to redirect his attentions away from drugs and toward productive lawful occupations suggests the efficacy and appropriateness of the sentence, although there is apparently still work to do by this defendant to overcome drug abuse.  Based upon the foregoing, the Court finds no ground to justify any reduction in Boyd's sentence and finds that he is not a candidate for compassionate release.

Boyd also requests an extended period of home confinement. The home-confinement statutes, 18 U.S.C. § 3624(c) and 34 U.S.C. § 60541(g), do not contain any provision for judicial review. Thus, Defendant's motion as it pertains to home confinement must be dismissed for lack of jurisdiction. *See United States v. Garza*, No. 18-1745-BAS, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) (recognizing, in case in which inmate invoked COVID-19 as reason for home

confinement, that "the Court lacks authority to designate home confinement"); *see also United States v. Carter*, No. 1:18-cr-86-JMS, 2020 WL 1808288, at \*2 (S.D. Ind. Apr. 9, 2020) (citing *Garza* in denying inmate's request to serve his sentence on home confinement because inmate had "not established that the Court has the power to grant him the relief he seeks"); *United States v. Brown*, No. RDB-16-cr-00553, 2020 WL 1479129, at \*1 (D. Md. Mar. 26, 2020) (denying a motion for home confinement filed by a prisoner citing concerns over COVID-19 because "[i]t is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)").

Likewise, the decision whether to permit a defendant to serve the end of a term of incarceration in a halfway house[4] under § 3624(c)(1) and (2) is within the discretion of the BOP. *See, e.g.*, *Sacora v. Thomas*, 628 F.3d 1059, 1066 (9th Cir. 2010); *Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009). The BOP is the most familiar with Defendant's conduct while incarcerated and has the necessary expertise to decide whether placement in a halfway house or on home confinement is appropriate and feasible in each particular case. *See, e.g.*, *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at \*2 (S.D. Ohio May 7, 2020).

Boyd suggests that Congress has approved the Courts' enhanced employment of home confinement as a tool to combat the COVID-19 exposure crisis in prisons. As there is no current concern at FCI McDowell where Boyd is housed and he has been fully vaccinated against the virus, no further discussion of this point is necessary.

Therefore, to the extent he seeks home confinement, Boyd's motion is denied for lack of jurisdiction.

---

[4] Halfway houses are also known as community corrections centers and residential reentry centers. *Ashburn v. Eichenlaub*, No. 07-13040, 2008 WL 5244413, at \*1 (E.D.Mich. Dec. 16, 2008).

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Demetrick Boyd, for compassionate release (DN 179) is **DENIED.**  The motion of the United States to file records under seal (DN 184) is **GRANTED.**

**IT IS SO ORDERED.**

May 25, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Counsel of Record
        Demetrick Boyd
        Reg. #10570-033
        FCI McDowell
        P.O. Box 1009
        Welch, WV 24801

17